IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION


EDWARD LEE LEWIS,

        Plaintiff,

v.                                      Case N0. 3:11-cv-01016

WESTERN REGIONAL JAIL; MR. CLARK,
Administrator; LIEUTENANT ALDRIDGE;
OFFICER RYDER; OFFICER ELKINS;
ALL MEDICAL STAFF; and OTHER
UNKNOWN STAFF MEMBERS,

        Defendants.


## PROPOSED FINDINGS AND RECOMMENDATIONS

On December 12, 2011, Plaintiff Edward Lee Lewis ("Lewis"), proceeding *pro se* and then incarcerated at the Western Regional Jail in Barboursville, West Virginia, filed a motion for injunctive relief claiming that he was being denied basic hygiene and was the victim of harassment by jail officials and other inmates. (ECF No. 1). By order of the presiding District Judge, the motion was docketed as a complaint made pursuant to 42 U.S.C. § 1983. (ECF No. 2). On January 12, 2012, Lewis supplemented his complaint by filing a second motion seeking an injunction in which he named additional defendants and fleshed out his claims for relief. (ECF No. 5). Subsequently, Lewis filed an application to proceed without prepayment of fees and costs and a motion to amend his petition asking the court to direct the fiscal clerk at the Western Regional Jail to forward all money in his inmate account

to his federal inmate account. (ECF Nos. 7 and 10). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Having thoroughly reviewed Lewis's motions, which were jointly construed as one complaint, the undersigned **FINDS** that the complaint fails to state a claim upon which relief may be granted. Therefore, the undersigned **RECOMMENDS** that the presiding District Judge deny Lewis's application to proceed *in forma pauperis,* dismiss the complaint, with prejudice, and remove this matter from the docket of the Court.

## I.    Background

Lewis is a federal prisoner who was placed in state custody at the Western Regional Jail ("WRJ") pursuant to a writ of *habeas corpus ad testificandum* to testify before a grand jury in an ongoing state murder investigation. (ECF No. 5 at 6; ECF No. 15 at 2). Lewis's detention at the WRJ began on November 10, 2011. (ECF No. 5 at 6). Shortly after his testimony to the grand jury, Lewis was eligible to return to federal custody. (ECF No. 15 at 2). However, because he had family that lived near the WRJ and he anticipated that he would have to testify at a subsequent murder trial, Lewis requested permission to remain at the WRJ until the murder case was resolved.  (*Id.*).

On December 12, 2011, Lewis commenced the instant action, seeking a court order compelling staff at the WRJ to perform their duties in a professional manner and to address what Lewis perceived as numerous violations of his constitutional

2

rights.[1] According to Lewis, he was subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution when staff at the WRJ: denied Lewis access to basic hygiene products and services, withheld medical treatment, subjected him to unsanitary conditions, failed to ensure his safety, called him a "snitch" and "rat," verbally abused and harassed him, and discriminated against him and other inmates held in protective custody. (ECF Nos. 1 and 5). In addition to injunctive relief, Lewis sought $1,000 in damages from each named defendant. (ECF No. 5 at 10). Lewis also requested the court to enter an order related to funds contained in his inmate account. (ECF No. 10 at 3).

In January 2012, after repeated demands by Lewis that he be returned to federal custody, the State's Prosecuting Attorney released his request under the writ of *habeas corpus* and arranged for Lewis's transfer. (ECF No. 15 at 6). According to records of the Federal Bureau of Prisons, Lewis currently is incarcerated at the federal correctional institution located in Three Rivers, Texas.[2] He has no fixed arrangements to return to the WRJ and would have no reason to do so unless and until he is required to testify at the murder trial, should it proceed.[3] (ECF No. 10 at 1–2).

The defendant, Western Regional Jail, has now responded to the complaint and wholly denies Lewis's allegations. (ECF No. 15). In addition, the defendant

---

[1] In his supplemental pleading, Lewis joined as defendants Western Regional Jail Administrator Mike Clark, Lieutenant Aldridge, Officer Ryder, Officer Elkins, "All Medical Staff," and "other unknown staff members." (ECF No. 5 at 1).

[2] *See* "Inmate Locator" at www.bop.gov (last accessed July 23, 2012).

[3] According to information supplied by the Putnam County Prosecuting Attorney's Office, the trial is scheduled to begin in September 2012.

argues that Lewis lacks standing to prosecute his claims as they are moot. (*Id.*) Lewis has not replied to defendant's response or otherwise addressed defendant's contentions of mootness and lack of standing.

## II.    Standard of Review

Under the provisions of 28 U.S.C. § 1915A,[4] a court must screen each case in which a prisoner seeks redress from a governmental entity or employee of a governmental entity. The court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). A complaint fails to state a claim upon which relief may be granted when, accepting the plaintiff's allegations as true, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility requires allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Consequently, the complaint must include "facts sufficient to state all the elements of [the plaintiff's] claim." *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2nd Cir. 2007)).

In the context of a *pro se* complaint, such as the one filed in this civil action,

---

[4] 28 U.S.C. § 1915 also requires an initial screening by the Court in each case in which a prisoner seeks to proceed *in forma pauperis*.

the court must liberally construe the allegations. *Erickson v. Pardus,* 551 U.S. 89, 94 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a cause of action currently cognizable in a federal district court. *Weller v. Department of Social Services,* 901 F.2d 387, 391 (4th Cir. 1990). The court may not rewrite the complaint to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

Here, Lewis alleges wrongdoing that entitles him to relief under 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 provides as follows:

> **Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.**

In order to state a cause of action under § 1983, Lewis must present facts showing that: (1) a person (the defendant) deprived him of a federally protected civil right, privilege or immunity and (2) that the defendant did so under color of state law. *Perrin v. Nicholson*, 2010 U.S. Dist. LEXIS 105121, at *4 (D.S.C. 2010); *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). If either of these elements is missing, the complaint fails to state a claim for

relief under 42 U.S.C. § 1983. Moreover, a complaint that states plausible facts and accepted legal theories under § 1983 may nonetheless be subject to dismissal on initial screening if the defendant is immune from liability.

## III.   Analysis

### A.   Mootness of Claims for Injunctive Relief

Before addressing the substance of Lewis's complaint, the undersigned must consider the threshold issue of mootness. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual . . . events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed,* 719 F.2d. 689, 694 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation. . . must continue throughout its existence." *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there."[5] *Rendelman v. Rouse,* 569 F.2d 182, 186 (4th Cir. 2009). "The reasons for finding mootness in such a context are clear. Once an inmate is removed

---

[5] Transfer does not affect a prisoner's claim for compensatory damages, however. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007). Moreover, "[a]ny declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted." *Incumaa*, 507 F.3d at 287. In this case, Lewis was returned to federal custody and is no longer housed at the WRJ. Thus, applying the general rule, his request for injunctive relief is moot.

Nevertheless, a narrow exception to the mootness doctrine exists for those claims that are "capable of repetition, yet evading review." *Federal Election Commission v. Wis. Right to Life*, 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007). To fall within this exception, Lewis must demonstrate that his claim for injunctive relief possesses the following two characteristics: (1) the challenged actions were in their duration too short to be fully litigated prior to their cessation or expiration, and (2) a reasonable expectation exists that Lewis will be subjected to the same actions again. *Spencer v. Kemna*, 523 U.S. 1, 17; 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). The second characteristic requires the same prisoner to face the same alleged illegalities at the same prison. *Wolf v. Anderson*, 2006 WL 218205 *3 (S.D.W.Va.). Lewis carries the burden of establishing post-transfer viability of his claim. He "need not show with certainty that the situation will recur, but a mere physical or theoretical possibility is insufficient to overcome the jurisdictional hurdle of mootness." *Van Bergen v. State of Minn.,* 59 F.3d. 1541, 1547 (8th Cir. 1995).; *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (The prisoner

must make a reasonable showing "that he will again be subject to the alleged illegality.") In *Higgason*, for example, an inmate alleged that his claim for injunctive relief should not be dismissed as moot, even though he was no longer at the facility about which he complained, because his return to that facility was a "virtual certainty." *Higgason*, 83 F.3d at 811. The Court rejected this contention as a basis for applying the exception, stating, "[s]uch an allegation does not amount to a 'showing' or a 'demonstration' of the likelihood of retransfer." *Id.* Mere conjecture that the prisoner may return to the first prison and again face the alleged wrong is not sufficient to meet the mootness exception. *Higgason,* 83 F.3d at 810*.*

In the present case, Lewis was detained at the WRJ for the limited purpose of testifying before a grand jury in an ongoing state murder investigation. Following his testimony, an indictment was returned and a trial ultimately was scheduled. However, shortly thereafter, the trial was postponed for a significant period of time, and Lewis was transferred back to a federal correctional institution. (ECF No. 10 at 1–2). At the present time, Lewis remains in federal custody, serving his federal sentence. While it is possible that Lewis may return to the WRJ to await his testimony in the murder trial, he has not made a reasonable showing or demonstration of the likelihood that this retransfer will occur. It is also quite possible that intervening events will transpire that eliminate the need for Lewis's retransfer. For instance, the State may locate another witness whose credibility and availability render Lewis's appearance at trial unnecessary, or the accused murderer may enter into a plea agreement. Equally as likely, the WRJ may not have space for Lewis at the time of the murder trial, requiring him to be housed at a different regional jail pending his testimony. In addition, Lewis has clearly stated his

intention not to cooperate or testify in the state murder trial or in any related proceeding. (ECF No. 5 at 8). Given these uncertainties, Lewis is hard-pressed to show a reasonable expectation or demonstrated probability that he will return to the WRJ and again be subjected to the alleged unconstitutional treatment by its staff. Therefore, injunctive relief would have no practical impact on Lewis's rights and would not redress in any way his alleged injuries.

Just as significant, Lewis's contention that his conditions of confinement at the WRJ deprived him of the minimal civilized measure of life's necessities is an issue not evading review. Even though his request for injunctive relief is moot, Lewis's claim for compensatory damages based upon those conditions remains to be addressed. *City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *See, also, Martin v. O'Grady,* 793 F.Supp 1191, 1195 (N.D.Ill. 1990). Accordingly, the undersigned respectfully **PROPOSES** that the United States District Judge **FIND** that (1) Lewis's transfer to another facility renders his claim for injunctive relief moot and (2) the current circumstances do not support the conclusion that Lewis's claim falls within the "capable of repetition, but evading review" exception to the doctrine of mootness.

### B.    Claims Seeking Compensatory Damages

Having determined that Lewis's claim for injunctive relief is moot, the undersigned looks to the substance of Lewis's claims for compensatory damages. As an initial observation, the undersigned notes that the claims against the WRJ should be dismissed as a matter of well-established law. As previously stated, to sustain a claim under § 1983 Lewis must show that a *person* acting under color of state law deprived him of a right guaranteed by the Constitution or federal laws. *Rendall-*

*Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Given that the WRJ is not a person subject to suit under § 1983, Lewis's complaint against it should be dismissed. *Roach v. Burch,* 825 F.Supp. 116 (N.D.W.Va. 1993); *See* also, *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45, (1989); *Cantley v. Western Regional Jail and Correctional Facility Authority,* 728 F.Supp.2d 803 (S.D.W.Va. 2010) (finding that the West Virginia Regional Jail Authority and Correctional Facility is not a "person" for purposes of a claim for money damages under § 1983.)[6]

Furthermore, as an arm of the State of West Virginia, the WRJ enjoys sovereign immunity from suit under the Eleventh Amendment to the United States Constitution.[7] *Roach,* 825 F.Supp. at 119. This sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint,* 2011 WL 286133 (D.S.C.) (citing *Will,* 491 U.S. at 78 (1989)); *see also Regents of the Univ. of California v. Doe,* 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."); *Field v. McMaster,* 2010 WL 1076060 (D.S.C. March 18, 2010) (An agency of the State is immune from suit

---

[6] The Western Regional Jail is nothing more than a facility operated and controlled by the Authority. *West Virginia Code § 30-20-1a, et seq.* As such, the Jail is subsumed by the Authority and, thus, is not a "person" under § 1983. *Noe v. West Virginia,* 2010 WL 3025561 at *5 (N.D.W.Va.). *See also Mora v. Westville Correctional Facility,* 2008 WL 2906761 (N.D. Ind.) at *2-3.

[7]  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

regardless of the nature of relief sought). Consequently, the undersigned respectfully **PROPOSES** that the United States District Judge **FIND** that defendant WRJ is not a "person" under the provisions of § 1983, is immune from suit pursuant the doctrine of sovereign immunity, and, therefore, is entitled to a summary dismissal from this case.

In regard to the remaining defendants, Lewis claims that the staff[8] at the WRJ violated his Eighth Amendment right to be free from cruel and unusual punishment. (ECF Nos. 1 and 5). The Eighth Amendment "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). However, "[p]rison conditions may be 'restrictive and even harsh.'" *Farmer*, 511 U.S at 833 (quoting *Rhodes v. Chapman,* 452 U.S. 337 at 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments." *Strickler v. Waters,* 989 F.2d 1375, 1390 (4th Cir. 1993). Ultimately, this prohibition "does not

---

[8] Lewis's pleadings do not indicate whether he intended to sue the individual defendants in their official or individual capacities. The determination of whether a defendant has been named in his official or individual capacity is generally determined by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.,* 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998). "When a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows,* 66 F.3d 56, 61 (4th Cir. 1995). Here, Lewis's pleadings include a request for compensatory damages and do not allege that defendants acted in accordance with a governmental policy or custom. Thus, the substance of Lewis's complaint is consistent with a § 1983 action against state actors in their individual, rather than official, capacities and the undersigned construes it accordingly.

mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

In order for Lewis to make out a *prima facie* case that his conditions of confinement violated the Eighth Amendment, he must show both (1) the deprivation of a basic human need that was "sufficiently serious," when measured by an objective standard, and (2) that the responsible prison officials had a "sufficiently culpable state of mind." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'" *Iko*, 535 F.3d at 238. The objective component is satisfied by a showing that the challenged condition caused or constituted an extreme deprivation. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, [Lewis] must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 634). "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of the deprivation devolve into an application of the subjective views of the judges deciding the question." *Shakka v. Smith,* 71 F.3d 162,

166 (4th Cir. 1995) (citing *Strickler v. Waters,* 989 F.2d 1375, 1370–80 (4th Cir. 1993)).

To fulfill the subjective component, Lewis must demonstrate a "deliberate indifference" to his health or safety by the defendants. *Farmer*, 511 U.S. at 834. The Supreme Court explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Deliberate indifference is more than mere negligence but less than malice. *Flores v. Stevenson,* 2012 WL 2803721 (D.S.C. May 11, 2012). Put simply, the staff at the WRJ had a sufficiently culpable state of mind if they were aware of an excessive risk of harm to Lewis's health or safety, but disregarded it. *See Wilson*, 501 U.S. at 298; *Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)) ("[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.") Ultimately, not every uncomfortable condition of confinement is actionable. "To the extent that [prison] conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes,* 452 U.S. at 347.

In addition to the legal framework set forth above, Lewis's claims are governed by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(e).  The PLRA expressly prohibits the filing of civil actions by prisoners "confined in a jail,

prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" referenced by the Act need not be significant, but it must be more than *de minimis. See, e.g., Flanory v. Bonn,* 603 F.3d 249, 254 (6th Cir. 2010); *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1312–13 (11th Cir. 2002); *Siglar v. Hightower,* 112 F.3d 191 (5th Cir. 1997); *Zehner v. Trigg,* 952 F.Supp. 1318 (S.D. Ind. 1997). In addition, "[a] plaintiff seeking compensatory damages for emotional distress cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." *Knussman v. Maryland*, 272 F.3d 625, 640 (4th Cir. 2001), *quoting Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996) (internal quotation marks omitted).

### 1.    *Personal Hygiene and Sanitation*

Lewis complains of numerous instances of unsanitary prison conditions and a denial of access to basic hygiene products and services. According to Lewis, while at the WRJ, he was denied haircuts, razors, showers, and cleaning materials. (ECF No. 1 at 1; ECF No. 5 at 2). Lewis also alleges that he was "exposed to human feces" because inmates at the WRJ often threw feces at other inmates or into the cells of other inmates. (ECF No. 5 at 2, 5, 6). He describes one particular instance, which occurred on November 29, 2011, in which an inmate allegedly threw feces at him. (*Id.* at 6). Further, Lewis contends that he was denied clean bed linens during his

detention and never saw a health and sanitation inspection conducted at the WRJ. (*Id.* at 5). Both parties have submitted copies of Lewis's grievances, which document his complaints and the Jail's efforts to remedy the situations.[9] (ECF No. 5 at 11–29; ECF No. 15-1 at 8–93).

Having reviewed the pleadings, the undersigned finds that Lewis fails to state a plausible claim for damages. He asserts numerous instances of unsanitary prison conditions and a lack of personal hygiene items, yet entirely fails to allege either "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 634). The attachments to the pleadings are similarly devoid of any suggestion that Lewis suffered an injury or that the staff at the WRJ ignored his concerns. In the absence of an extreme deprivation and a sufficiently culpable state of mind on the part of the defendants, Lewis is simply unable to sustain a *prima facie* conditions-of-confinement case. As previously noted, prison conditions are often less than ideal, but only extreme deprivations of life's basic necessities violate the Eighth Amendment's prohibition on cruel and unusual punishment. Consequently, the undersigned respectfully **PROPOSES** that the presiding District Judge **FIND** that

---

[9] The grievance forms supplied by the parties demonstrate that Lewis complained frequently about the conditions at the WRJ, sometimes filing as many as four to five grievance forms in one day.  None of these forms describe any physical injury suffered by Lewis. Lewis did complain of feeling unsafe after some prisoners found a newspaper article confirming that Lewis had testified on behalf of the State against accused murderer, David Matthew Little. Lewis expressed concern that Little had family and friends in the jail who had targeted him, reporting that they had made threats to harm him and his family if he testified at trial and also threw human waste at him. Shortly after receiving these grievances, the WRJ transferred Lewis to a protective custody pod at his request.

Lewis has not satisfied either component of his Eighth Amendment claim based on issues of sanitation and hygiene. *See Iko v. Shreve*, 535 F.3d at 238.

### 2.    *Safety Issues*

Next, Lewis argues that the staff at the WRJ consistently failed to ensure his safety. Much of Lewis's concerns center on the staff's operation of the Duress Speaker system. According to Lewis, when an inmate is detained in protective custody and "a pod officer (rover) is not in the section making security checks," the Duress Speaker system is the only means of communication between the inmate in his cell and a corrections officer. (ECF No. 5 at 2). Lewis alleges that he often attempted to use the Duress Speaker system but that staff members frequently ignored his calls "for hours at a time." (*Id.*). Lewis further asserts that staff members regularly failed to conduct security checks of the protective custody housing pod to confirm the safety and well-being of Lewis and other inmates. (*Id.* at 2–3). In Lewis's view, the staff's refusal to respond to the Duress Speaker system and failure to conduct regular security checks placed the lives of the inmates in danger. (*Id.* at 3). Further, Lewis contends that his safety and well-being were compromised by the lack of a video monitoring system at the WRJ. (*Id.*). Lewis argues that without video monitoring, the Jail had no way of checking on staff members "to ensure the staff are doing their signed [sic] duties" and "are being professional." He argues that video monitoring would also deter inmates from breaking the Jail's rules. (*Id.*).

As a general rule, prison officials are responsible for taking "reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). The Eighth Amendment also imposes a duty on prison officials "to protect prisoners from

violence at the hands of other prisoners." *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 198 (1991). To establish a *prima facie* case on this ground, Lewis must allege that a specific situation posed an excessive risk of harm to him and that prison officials were deliberately indifferent to it. A contention that officials "should have" recognized a potential for harm is insufficient to sustain a plausible cause of action. *Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir.1997). Rather, Lewis must show that the defendants actually perceived the danger and subjectively appreciated that their response was "inappropriate in light of that risk." *Id.; see also Parrish ex rel Lee v. Cleveland,* 372 F.3d 294, 302-03 (4th Cir. 2004). Moreover, to recover compensatory damages, Lewis must allege a "serious or significant physical or emotional injury." *De'Lonta,* 330 F.3d at 634.

Here, Lewis does not allege that any physical or emotional injury resulted from the challenged conditions. Similarly, he describes no specific emergency situation that was ignored by prison officials. Instead, Lewis presents only theoretical arguments and conclusory assertions mixed with speculation of *potential*, as opposed to *actual*, harms. *If* he had been injured or sick in his cell, his life would have been in danger because tower guards ignored his pages over the Duress Speaker system. *If* he had been physically attacked, jail officials would not have been able to protect him because they had no system of video monitoring. Unsupported and conclusory allegations of potential future injury are insufficient to establish a serious physical or emotional injury or a substantial risk of serious harm as required by *Farmer*.

In addition, Lewis fails to allege that the defendants were deliberately indifferent to a particular substantial risk of serious harm to his person. *Farmer*, 511

U.S. at 837. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837); *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)). Beyond asserting that tower guards ignored his calls over the Duress Speaker system, Lewis offers no facts specific to the named defendants, or their knowledge of unsafe conditions, or their state of mind. Assertions of potential or theoretical risks of harm which should be apparent to prison officials are insufficient to state a *prima facie* case under § 1983.  Accordingly, the undersigned respectfully **PROPOSES** that the presiding District Judge **FIND** that Lewis fails to state a plausible claim based upon the alleged indifference of prison officials to a known and substantial risk of harm to Lewis.

### 3.    *Medical Treatment*

Lewis also asserts that he was denied medical treatment during his time at the WRJ. According to Lewis, he suffers from acid reflux and an eye disorder that inhibits tear production, both of which require him to take medication on a daily basis. (ECF No. 5 at 2). Lewis alleges that he was occasionally forced to go without his requisite medication for up to six days at a time. (*Id.*).

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "In order to state a cognizable claim for denial of medical care

under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need." *Estelle*, 429 U.S. at 104. "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier v. Beorn,* 896 F.2d 848, 851–52 (4th Cir. 1990). "[A] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)) (internal quotations omitted). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Miltier*, 896 F.2d at 851-852 (internal citations omitted). An inmate is not entitled to unqualified access to health care. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin,* 551 F.2d 44, 47–48 (4th Cir. 1977).

Lewis's claim fails because his factual allegations do not satisfy the objective or subjective requirements of an Eighth Amendment claim. Lewis does not allege that lack of medical treatment at the WRJ caused him "serious or significant physical or emotional injury" or placed him at "a substantial risk of harm." He makes no claim that delays in refilling his medications aggravated his conditions, caused him to suffer a marked physical deterioration, or resulted in a permanent loss of function. Instead, Lewis complains only that the lack of medication made it

difficult for him to eat and sleep. (ECF No. 5 at 2; ECF No. 15-1 at 57, 87).

Further, Lewis fails to allege deliberate indifference on the part of the defendants in responding to his medical needs. (ECF No. 5 at 2). Given that a delay in refilling medication may be attributed to a myriad of reasons, and only "subjective recklessness" on the part of the responsible prison official is actionable, Lewis's failure to articulate facts demonstrating deliberate indifference is fatal to his complaint. *Farmer,* 511 U.S. at 839–40. A review of the grievance forms reflects that Lewis complained twice about his medication running out and asked for more medication at a higher dosage. On the first occasion, the nurse responded the following day, providing a renewal of the prescription and informing Lewis that his dose could not be increased because he was already at the maximum allowable dosage. (ECF No. 15 at 3-4). On the second occasion, the medications were again renewed. Certainly, the records do not indicate medical indifference, nor do they implicate any of the named individuals. Consequently, the undersigned **PROPOSES** that the presiding District Judge **FIND** that Lewis fails to state a compensable claim based upon deficient medical care.

### 4.    *Inadequate Food*

Next, Lewis argues that the food served at the WRJ is nutritionally inadequate and often served in an unsanitary fashion. According to Lewis, inmates are supposed to receive three meals a day, two of which are supposed to be served hot. (ECF No. 5 at 3). Lewis complains that meals are, in fact, often served cold. (*Id.*). Further, Lewis states that inmates are not served any fruit, the beverages provided to inmates are "watered down" and have no nutritional value, and that vegetables are rarely cooked. (*Id.* at 3–4). In Lewis's view, the manner in which the

20

food is served is unsanitary because the utensils and serving trays are often dirty and the staff that serve the meals are not required to wear clean gloves. (*Id.* at 4). Lewis believes that the cumulative effect of these violations constitutes cruel and unusual punishment under the Eighth Amendment.

"Allegations of inadequate food for human nutritional needs or unsanitary food service facilities are sufficient to state a cognizable constitutional claim so long as the deprivation is serious and the defendant is deliberately indifferent to the need." *King v. Lewis*, 358 F. App'x. 359, 360 (4th Cir. Dec. 31, 2009) (unpublished) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Bolding v. Holshouser*, 575 F.2d 461 (4th Cir. 1978)). However, inmates should not expect the "amenities, conveniences and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988). So long as food is "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it," *Shrader v. White,* 761 F.2d 975, 986 (4th Cir. 1985) (quotation and citation omitted') and inmates are provided a nutritionally adequate diet, prison officials have the discretion to control its contents. *Divers v. Dep't of Corrs.*, 921 F.2d 191, 196 (8th Cir. 1990).

Once again, Lewis's allegations of a nutritionally inadequate diet and unsanitary food service fail to state a claim upon which relief may be granted because he fails to allege "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of harm resulting from the prisoner's unwilling exposure to the challenged conditions." Although Lewis complains that the food at the WRJ was nutritionally inadequate, he presents no factual allegations supportive of this conclusory speculation. Lewis does not

allege that he became sick from the food served to him, that he lost a significant amount of weight, that the food was infested with pests or animal droppings, that it was spoiled, or that the number, portions, or frequency of meals caused a documented deterioration of his physical or mental health. Instead, Lewis takes issue with the quality of the food preparation and the manner in which the food was served to him, neither of which indicates a deprivation of life's basic necessities. *See Madyun v. Thompson*, 657 F.2d 868, 874–75 (7th Cir. 1981) (allegation that food served to segregated prisoners was cold and not on the menu served to general prison population was insufficient to state an Eighth Amendment violation); *Hoitt v. Vitek*, 497 F.2d 598, 601 (1st Cir. 1974) (prisoners' allegation of deprivation of hot meals failed to state a claim of cruel and unusual punishment, given the stipulation that three meals were provided daily); *Prophete v. Gilless*, 869 F.Supp. 537 (W.D. Tenn. 1994) (food which was cold by the time it was served did not constitute cruel and unusual punishment); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir.1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); *Williams v. Berge,* 102 Fed. Appx. 506, 507 (7th Cir.2004) (unpublished) ("Prisoners have a right to adequate food, but not to food that is tasty or even appetizing[.]") (internal citations omitted).

Only "extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim," *Hudson v. McMillian,* 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed. 156 (1992). Lewis's complaint simply does not describe circumstances that rise to that level. Consequently, the undersigned respectfully **PROPOSES** that the presiding District Judge **FIND** that Lewis fails to state a plausible claim based upon

inadequate food preparation and service.

### 5.   Officer Ryder's "Snitch" Comment

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Based on this duty, courts have found that, in certain circumstances, prison officials may be held liable for labeling an inmate a snitch. *See, e.g.*, *Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001); *Northington v. Marin*, 102 F.3d 1564, 1567–68 (10th Cir. 1996); *Hobbs v. Evans*, 924 F.2d 774, 775 (8th Cir. 1991); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138–39 (9th Cir. 1989); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Gullate v. Potts*, 654 F.2d 1007, 1012 (5th Cir. 1981). The reasoning of these holdings is obvious. As to the first *Farmer* prong, courts readily recognize that the reputation as a snitch places an inmate at "substantial risk of injury" at the hands of other inmates. *Reese v. Groose*, 60 F.3d 487, 488 (8th Cir. 1995). As the Fourth Circuit has noted, "[i]t is impossible to minimize the possible consequences to a prisoner of being labeled a 'snitch.'" *Miller v. Leathers*, 913 F.2d 1085, 1088 n* (4th Cir. 1990). As to the second prong, where the prison official has intentionally caused the plaintiff to be identified as an informant, there is no difficulty in finding a sufficiently culpable state of mind.

Lewis claims that correctional officer Ryder called Lewis a "rat" and "snitch" as set forth in his grievances. (ECF No. 5 at 7). On December 1, 2011, Lewis filed a grievance stating that unspecified staff members had called him a "rat." (ECF No. 15 at 40). That same day, Lewis filed a similar grievance against Officer Ryder, reporting that Officer Ryder had conducted a check of Lewis's cell on November 29,

2011, during which he stated to Lewis, "So you [are] the snitch of the jail." (*Id.* at 42). The following day, staff members, including Jail Administrator Mike Clark met with Lewis to discuss his grievances. (*Id.* at 40). After some discussion, Lewis reassured Mr. Clark and the other staff members that "everything [was] OK" and that they could throw away his grievances from the previous day. (*Id.*).

As noted in the previously cited cases, labeling an inmate a "snitch" can constitute an Eighth Amendment violation under certain circumstances. In those cases, the courts recognized a potential constitutional deprivation because correctional officers identified the complaining prisoner as a "snitch" or "rat" in the presence of other inmates; thereby, exposing the prisoner to a substantial risk of inmate retaliation. However, those circumstances are not present in this action. Here, Lewis alleges that Officer Ryder called him a "snitch" in conversation on November 29, 2011. At that time, Lewis had already been transferred to protective custody and was in his cell, alone, when Officer Ryder allegedly made the comment. (ECF No. 15-1 at 21, 42). (*Id.* at 42). Lewis does not assert that Officer Ryder made the comment in front of other inmates or that other inmates overheard the conversation. Lewis does not claim that he feared inmate retaliation as a result of Officer Ryder's comments. To the contrary, Lewis complained that Officer Ryder and the others made these comments to entice Lewis into "doing something crazy" that would get him in trouble. (*Id.* at 41).

Moreover, Lewis had requested a transfer to protective custody several days prior to Officer Ryder's alleged comments because of concerns for his safety after other inmates obtained an article from a Charleston newspaper stating that Lewis had testified for the State before a grand jury in a murder investigation. (*Id.* at 17–

20). Based on Lewis's own allegations, knowledge of his testimony and cooperation with the Government was widespread prior to Officer Ryder's comments. In short, Lewis does not allege that inmates attacked or harassed him because of Officer Ryder's comment or that he suffered significant emotional distress due to threats of inmate retaliation. Instead, Lewis states that he feared for his safety because of the Charleston newspaper article that other inmates had previously read and shared between pods. After Lewis expressed concerns over his safety, he was promptly transferred to protective custody. (*Id.* at 21). Although Officer Ryder's comments, if made, were deplorable, the facts alleged here simply do not satisfy the requirements of an Eighth Amendment cruel and unusual punishment claim. Consequently, the undersigned respectfully **PROPOSES** that the presiding District Judge **FIND** that Lewis fails to state a claim upon which relief may be granted based upon the alleged comments by Officer Ryder.

###### 6.  *Verbal Harassment and Abuse*

Lewis asserts that staff members at the WRJ repeatedly verbally harassed and abused him. (ECF No. 1 at 1; ECF No. 5 at 8). For the most part, the verbal abuse of an inmate by guards or prison administrators does not rise to the level of an Eighth Amendment violation. *See Langston v. Fleming*, 38 F.3d 1213 (4th Cir. 1994) (Table Decision) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)); *see also Johnson v. Unknown Dellatifa,* 357 F.3d 539, 546 (6th Cir. 2004) (holding same); *Mitchell v. SWVRJ Authority*, 2012 WL 1978005, at *2 (W.D.Va. June 1, 2012) (collecting cases). The Constitution does not "protect against all intrusions on one's peace of mind." *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991). Verbal harassment of an inmate, even to the extent that it causes fear or emotional anxiety,

does not violate any identified liberty interest. *See Emmons v. McLaughlin*, 874 F.2d 351, 354 (6th Cir. 1989) (stating verbal threats causing fear for plaintiff's life are not an infringement of a constitutional right); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate constitutional rights); *Lamar v. Steele*, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A [§] 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation.").

Lewis's vague allegations of verbal harassment and abuse do not include any details or an accompanying complaint of serious physical or emotional injury or a substantial risk of such an injury. Absent allegations of a constitutional deprivation and a resulting physical or emotional injury, Lewis's complaint is insufficient to state an Eighth Amendment claim. Therefore, the undersigned respectfully **PROPOSES** that the presiding District Judge **FIND** that Lewis fails to state a claim based upon alleged verbal harassment and abuse.

### 7.   *Protective Custody*

Finally, Lewis complains of the restrictive nature of protective custody and compares the treatment of inmates in the general prison population to that of prisoners in protective custody. (ECF No. 5 at 4). According to Lewis, inmates in protective custody are not permitted to: attend religious services, watch television, attend educational classes, exercise in the indoor gymnasium, or receive contact visits from friends or family members. (*Id.*). Lewis argues that inmates in protective custody are not afforded the same opportunities as those in the general prison population. Although Lewis relies solely on the Eighth Amendment, his complaint is also consistent with an equal protection argument under the Fourteenth

Amendment to the United States Constitution. Accordingly, the undersigned analyzes Lewis's complaints under both amendments.

Lewis's Eighth Amendment argument fails inasmuch as Lewis does not allege that the conditions in protective custody seriously deprived him of a basic human need. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Nor does Lewis contend that the WRJ failed to provide him with "adequate food, clothing, shelter, and medical care" or to protect him from harm while he was in protective custody. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Instead, Lewis's complaint focuses on the seclusion and the limitations on activities associated with housing in protective custody.  The isolation inherent in protective custody, by itself, does not violate the Constitution. The Fourth Circuit has found that "isolation from companionship, restriction on intellectual stimulation, and prolonged inactivity, inescapable accompaniments of segregated confinement, will not render that confinement unconstitutional absent other illegitimate deprivations." *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 472 (4th Cir. 1999) (citing *Sweet v. South Carolina Dept. of Corrections*, 529 F.2d 854, 861 (4th Cir.1975) (en banc)) (internal alterations omitted).

Similarly, Lewis's equal protection argument fails to state a claim on which relief may be granted. The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated persons be treated alike. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (*citing Plyler v. Doe, 457* U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). To state a claim under the Equal Protection Clause, Lewis's allegations must

demonstrate: (1) "that he has been treated differently from others with whom he is similarly situated"[10] and (2) that the differential treatment was the result of intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). If the discrimination was based on Lewis's membership in a suspect class, the differential treatment must be narrowly tailored to a compelling interest; otherwise, Lewis must show that the discrimination did not bear a rational relationship to a legitimate government purpose. *See Cleburne*, 473 U.S. at 440–42. Ultimately, "prisoner claims under the equal protection clause ... must ... be analyzed in light of the special security and management concerns in the prison system." *Morrison*, 239 F.3d at 655.

Inmates in protective custody are not a suspect class and regulations concerning their treatment are subject to rational basis review. *See Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir. 1984). The Fourth Circuit has held that "the difference in treatment among prisoners in protective segregation and the general population has a substantial, rational basis in the legitimate interest in prison security[.]" *Allgood*, 724 F.2d at 1101. "Protective segregation is offered to inmates for their safety, the safety of others in confinement, and to insure institutional security and order. To allow prisoners in protective segregation to enjoy all of the same privileges to the same degree as those in the general population would eviscerate the value of protective segregation." *Id.* at 1100–1101. As the Supreme

---

[10] Rather than conduct a full equal protection analysis, some Fourth Circuit district courts have dismissed prisoners' equal protection claims after concluding that inmates in protective custody or administrative segregation are not similarly situated to those in the general population. *See e.g.*, *Vandyke v. S.W.V.R.J.*, 2012 WL 2131094, at *3 (W.D.Va. June 12, 2012); *Smith v. Thomas*, 2011 WL 4836227, at *6 (E.D.Va. Oct 12, 2011); *Bentley v. Johnson*, 2009 WL 2370618, at *3 (W.D.Va. July 31, 2009).

Court has recognized, "internal [prison] security [is] perhaps the most legitimate of penological goals." *See Overton v. Bazzetta*, 539 U.S. 126, 133, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003).

As defendant notes, "[d]ue to the nature of Protective Custody, in which inmates are isolated from potential harm at the hands of other inmates, residents are not able to participate in many types of activities in groups." (ECF No. 15 at 5). Restrictions limiting access to group religious services, group exercise, contact visitations, and group television viewing are purposely designed to limit inmates' interaction with one another and reduce the risk of harm to inmates and staff members. (*Id.*). The challenged conditions, therefore, are rationally related to and consistent with the legitimate purpose of protective custody—to ensure the safety of inmates and the orderly operation of the WRJ. *See Overton*, 539 U.S. at 133. Having found that the restrictions placed on Lewis while in protective custody were rationally related to a legitimate governmental purpose, the undersigned respectfully **PROPOSES** that the presiding District Judge **FIND** that Lewis has failed to state a claim based upon the conditions of his confinement in the protective custody housing pod.

### C.    Money in Inmate Account

On February 24, 2012, following his return to federal custody, Lewis filed a motion to amend his petition, asking this Court to direct the fiscal clerk at the WRJ to forward all money in his WRJ inmate account to his federal inmate account. (ECF No. 10). According to Lewis, he had $15.00 in his WRJ inmate account at the time of his return to federal custody and an additional $20.00 that had been mailed to the WRJ following his transfer to federal custody. (*Id.* at 2). On May 24, 2012, the

undersigned entered an Order directing Lewis to confirm the receipt of $15.00 in his federal inmate account and ordering Lewis to submit an affidavit or other evidence of the $20.00 allegedly mailed to the WRJ following Lewis's transfer. (ECF No. 11). The undersigned informed Lewis that his motion for a transfer of funds would be considered moot if he did not respond to the Order by June 15, 2012. (*Id.* at 2). On May 30, 2012, the WRJ filed a letter and a copy of the record of Lewis's inmate account during his time at the WRJ. (ECF No. 14). The WRJ indicated that it housed Lewis from November 10, 2011 through January 30, 2012. (*Id.* at 1). A check for $15.16 was mailed to Lewis's inmate account at FCI Fairton on February 10, 2012 and was cashed on February 17, 2012. (*Id.*). Defendants stated that they had no knowledge of the $20.00 check that Lewis alleges was mailed to him following his return to federal custody. (*Id.*). As of July 23, 2012, Lewis had not responded to the undersigned's May 24, 2012 Order. Consequently, the undersigned respectfully **PROPOSES** that the presiding District Judge **FIND** that Lewis's motion for a transfer of funds is moot.

### IV.  <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the United States District Judge accept and adopt the proposed findings and **RECOMMENDS** that Plaintiff's Application to proceed without prepayment of fees or costs (ECF No. 7) be **DENIED** pursuant to 28 U.S.C. §1915(e)(2)(B); his Complaint (ECF Nos. 1 and 5) be **DISMISSED, with prejudice,** for failure to state a claim; and his motion to transfer funds (ECF No. 10) be **DISMISSED, with prejudice**, as moot.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, Defendants, and any counsel of record.

**FILED:** July 24, 2012.

Cheryl A. Eifert
United States Magistrate Judge